Good morning, everybody Morning All right, we're going to start off with our case number one I'm just going to read the initial appeal number, which is 19 dash 3234 this is Santon Rail Company LLC versus San Luis and Rio Grande Railroad We are going to begin with argument from the appellants. I understand the order will be mr. Goldsmith followed by mr. Pankow followed by mr. Tabach Nick and mr. Goldsmith. You are reserving five minutes for rebuttal That's correct. Your honor. Very good after we hear from them. We'll move to counsel for the appellee first We'll hear from mr. Vincent and then mr. Roberts. Is that correct? That is your honor. Very good Let's begin first with argument from mr. Goldsmith Good Morning, your honors may it please the court Andrew Goldsmith from prior cashman for intervener appellant Santon Rail Company LLC Subject matter jurisdiction is lacking in this matter for three separate and independent reasons First the cleanest and simplest basis for finding diversity lacking is that the defendants have a principal place of business in Chicago? Because Iowa Pacific Holdings IPH makes all decisions for the defendants and it does so from its office in Chicago its headquarters So therefore that is where the nerve center of the defendants is located Second under the canon line of cases and the doctrine of corporate separation the defendants Subsidiaries have the same principal place of business as the ultimate parent IPH Because the corporate separation between them has not been maintained and it is clearly superficial and fictional third under alter ego reasoning the non-diverse citizenship of IPH and the other non-diverse IPH companies should be imputed to the defendants These are the three bases for reversal all of which are fully supported by the record and in particular the Declaration of David Council of record to the defendants in this case and the Macau Declaration is truly a remarkable piece of evidence Not only does he admit that IPH makes all decisions for all of the IPH companies which include the defendants Not only does he admit that IPH has its office its headquarters in Chicago But he also admits that IPH and the IPH companies operate as a single unified Enterprise that does not adhere to even the most basic of corporate formalities and he then proceeds to supply detailed facts Supporting essentially what is a checklist of the factors that the courts look to in applying alter ego analysis The companies have the same bank account. They commingle funds and assets They share debts and liabilities and they do all of those things without keeping any records of the intercompany transfers On top of that we have no board meetings being held for several years No taxes being filed and when they were filed they were filed on a consolidated basis and we have the same person who is an Illinois citizen who is the president of every single one of These companies and last but not least these companies have been severely undercapitalized or insolvent since 2016 and it's not just mr. McCown the receiver also admits at page 237 of the record that there has been quote a chronic failure to observe corporate formalities and to maintain adequate books and records I'm sorry to interrupt you. Can I ask you a couple of just background questions? Maybe you can help with sure What? What is your understanding of the basis upon which? The district court granted Santan's motion to intervene was it granted as a matter of right or was it granted permissively? And where does the record answer that question? I? Don't think that the court was expressed in its decision as to why? Santan was granted the right to intervene. I don't think it's expressly said that this is a matter of intervention as a right however, the basis for intervention was that we have a consent judgment against not only the defendants but the other IPH companies and This was an action which jeopardized the assets from which we were going to attempt to satisfy our judge, right? And so you moved under 24 a and 24 B, correct? That's correct. Okay. Does the answer to that question in your view matter? And if not, why not? I Don't think it matters your honor because I think we satisfy either Wrong, and as long as we are We've intervened here We have I'm not sure why it would matter. I guess would be like, okay So one one reason it could matter is because the Supreme Court in 2017 you know in the town of Chester case talked about interveners as a matter of right being able to Satisfy article 3 standing now. I know as you hear that you're gonna say that's that we do And it it would help me if you could explain the basis of your ongoing Injury as a result of the receivership proceedings in Chicago Certainly your honor. So Santan has standing in this case because of the IRS agreement The IRS agreement was entered by the receiver and but for the court having subject matter jurisdiction The receiver never would have been appointed So the IRS the IRS, how does the IRS settlement today on? February 18th affect your client So it affects my client your honor Because that agreement has conferred the IRS with claims and liens Against various of the IPH companies that it never had claims or liens against previously So for example, there's an ongoing bankruptcy with heritage and this IRS agreement gives the IRS claims and liens against heritage And those liens are going to be senior to our unsecured claim in the bankruptcy And therefore it impairs us from collecting on our judgment It impairs us as an unsecured predator because the IRS is now in a senior position to us, but for this agreement They're not going to be senior to us. I Hope that answers your question. Yeah, mr. Goldsmith. You're not abandoning the second Argument for standing here that there was a rejected lease agreement and Santan ahead with one of the receiver Receiver ship entities heritage. Is that an alternative ground you're using for standing? That's correct your honor So there is one correction I'd like to make the brief our report our reply brief says there's a distinction between rejection and breach That's not technically correct There were a rejection is a breach but the distinction here is while heritage already was in breach of the lease We were not calling it. We were not declaring a default. We were not Trying to terminate the lease at that point and even if we had done that Heritage still had an obligation upon termination to maintain and preserve and store the equipment for 60 days Because of the rejection they were absolved of that obligation and Santan had to take it upon itself to pay for storage costs during that period Mr. Goldsmith did Santan in the district court consent to the rejection of the heritage lease? Well, I don't think we consented your honor the We did not technically object at the point when the receiver sought permission to reject the lease But the receiver didn't need permission to reject the lease If you look at the receivership order it expressly authorizes the receiver to reject contracts and leases So I think it was a moot point at that juncture We really did not have any basis to object other than our continuing objection that the court lacked subject matter jurisdiction to enter To appoint the receiver in the first place But returning to the Why subject matter jurisdiction is lacking? I think you know We have three independent reasons here and I think the clearest and most obvious reason is that IPH is the brain here IPH is the brain of all of these companies including the defendants It's underuted that they make all major decisions If you look at paragraph 15 of the Macau declaration, which is on page 248 of the record He says quote until the appointment of a receiver all major business decisions were made by IPH For all of the IPH companies and again that includes of the defendants Irrespective of whether a manager has been appointed over a particular location and we know that IPH has its office in Chicago and it has admitted in a sworn verified answer in an Unrelated case that that is where it maintains its principal place of business And in addition because there has been absolutely no respect for corporate formalities here the Canon doctrine which has been applied to subject matter jurisdiction and I would refer the court to the bone RV shot land case that we cite The the corporate separateness is not entitled to respect and therefore the principal place of business of the subsidiaries the defendants Corresponds to that of the parent the IPH and that is in Chicago And I see I'm at five minutes now So I'd like to reserve the remainder of my time for rebuttal unless there are further questions right now No, that time will be reserved. We'll do move now to mr. Pankow Good morning, your honors May it please the court Michael Pankow appearing on behalf of a palace and Louie Central Railroad at all between the briefs is the petitioning creditors our appeal concerns the involuntary bankruptcy petition filed against emily and Rio Grande Railroad the district court found that the involuntary bankruptcy petition violated anti-interference provisions in the order appointing a receiver and we appeal Receiverships are of course an everyday occurrence appointment of a receiver Moreover is explicit statutory grounds under the bankruptcy code for it for an order for relief There's a box right there on the to check on the official form of involuntary petition It's a district why why isn't your appeal moot I I don't understand I don't understand from your briefs What it is today on February 18th of 2021 that gives you a continuing interest in challenging aspects of a terminated receivership in Chicago Without question your honor the character of the appeal has changed since we filed the initial notice of appeal There are issues that I do believe remain live First there is the receivers cross appeal Which in part is bound up with our appeal to begin with so don't so why don't why don't I think the easiest way to get to it in the interest of time is if you if you focus on just traditional standing analysis Okay, and you focus on injury in fact, which has to be actual or imminent What is the actual or imminent injury that the petitioning creditors have remaining today? The actual I mean the actual or imminent is There does remain some I I don't want to oversell this to your honor because I I don't think it's likely but there is some overhanging issue of potential contempt how How so what what is the what's the circumstance under which judge Durkin would hold the petitioning creditors in contempt Today February 18th, or at some point in the future. What's that fact pattern look like? I certainly I certainly hope that That that it would be unlikely, but there are continuing What could you do give me an example of what you what your clients could do that would result in contempt? As I sit here I do not know There are there are other proceedings pending in which some of the you know, many of the same parties here are You know party Are you referring to the bankruptcies? Yes. Oh, yeah. Absolutely. I totally understand that and I understand Why your clients would have immense interest in that what I don't understand is Is how today the terminated receivership? Affects your clients and the risk of contempt which you do a good job articulating it in your briefs It just doesn't seem it. It doesn't seem in any way likely Seems exceedingly remote to me because I can't think of what you would do Well, I would certainly hope that it is unlikely There is nothing that prohibits either nothing I'm aware of in the record that prohibits either judge Durkin from revisiting the issue or Prohibits one of the parties if something happens He's closed the case Right, so someone would have to reopen the proceedings in the district court. It's now in the Seventh Circuit so someone would have to reopen it and He would have to find that the petitioning creditors did something That would result in a severe sanction like contempt and I I mean I can tell you before the oral argument I thought what could you possibly do just hypothesize it? However unlikely it might be I Can't think of anything There there is one additional Consideration in terms of the impact of a ruling on this appeal your honor and that is There is an indirect connection to the ad hoc appeal to be argued by mr. Tabach Nick separately in that is Their arguments regarding Jurisdiction are are premised upon the act of the filing of the involuntary petition by by the petitioning creditors my clients now I To be clear I believe the ad hocs argument is independent on the rightful of the rightfulness or wrongfulness of that Petition it was filed that had an effect and the ad hoc committee is arguing as to the effect if the court were to disagree with in some aspect to that analysis and then then to determine that appeal needed to Evaluate whether or not the filing of the involuntary petition itself was originally wrongful Then this appeal would remain I think relevant to the court's consideration Um, and as I was saying and I don't want to belabor the Receiverships are very common receivers appointment of a receiver is explicitly grounds for a leaf for an order for a leaf under the bankruptcy code Yet the district courts order Barring a bankruptcy case on the basis of appointment of a receiver is 180 degree and change into operation of the statute Moreover as receivers counsel acknowledged to the district court the anti-interference provision in this order is completely standard Moreover the record in connection with the initial anti-interference provision is devoid of any indication That something extraordinary was being ordered or requested There's no mention of bankruptcy no evidence in support of an injunction No findings in support of an injunction the parties enjoying credit a definable group creditors eligible to file an involuntary Petition we're not parties to this case and not put on notice that someone was asking to prohibit their exercise of a statutory, right? Um, let me jump your honor to your honors to you know, an ultimate question, which is Appley's fault petitioning creditors for not having come to the district court before filing the involuntary petition and Certainly the petitioning creditors would have acted differently had they understood the district courts interpretation of the receivership order itself But the receivership the receivers argument in this regard coupled with the admittedly standard and Anti-interference language relied upon in this order would unfairly leave not only these petitioning creditors But any future possible petitioning creditors three untenable choices number one Undertake the delay and expense of a comfort order Please keep in mind that during the 30 days the district court was conduct considering the petitioning creditors request here Receivership administration kept moving forward and the estate was burdened with millions of dollars of additional liens In part due to the IRS agreement. Mr Gold goldsmith mentioned not to mention but potential runnings of statutes of limitation reach back periods and the like That was one option Second option would be to go ahead and file the involuntary petition in the face of uncertainty and effectively play Russian roulette What does the standard language mean in this case does it prohibit a filing or not? And then third Deterred by options one and two a potential petitioning predator could simply shrug and decide it's not worth the expense Thank You mr. Pankow world option three is likely what we'll get much of the time. Mr. Pankow your time is Completed. Thank you very much. I apologize. Thank you. We'll move now to mr. Tabach neck Yes, your honor. Thank you. This is Douglas Tabach Nick law offices of Douglas T Tabach Nick counsel to the ad hoc committee of Creditors unsecured creditors your honor and may it please the court So when the petitioning creditors filed the involuntary petition, maybe I should just start off I want to answer the question of judge Scudder on the issue of standing because we addressed the issue at page 3 of our reply brief Which I think equally applies to mr. Pankow's clients and this goes to the decision by judge Easterbrook we're creditors assets in which we have a stake have been disposed of in the receivership action and This confers standing the notion that you have to Appeal was overruled and the Wozniak decision was overruled by the Supreme Court And this is all this determined in that brief and I wanted to make sure that we got that. Yes, I'm not I'm not I'm not as convinced to that as you are Okay, my mind is open and here's why I'm very familiar with what you're talking about in your reply brief Okay, but it's unaccompanied to my eye by any specifics Sure, so let me tell you how it happens. So in Me to where in the record Where specifically in the record judge Durkin entered orders? That affected or disposed of assets that affected your clients So in the in the record part of it is the important part of that question to me Okay the the if we look for the orders that That extended liens to assets that where they were not already there Okay, that's the the first instance we also what what talk about date what date and what docket entry I Don't have that in front of me your honor Okay, it's not in your brief either There are statements that are made that if they're if they're true, I think your argument has some footing Yes, the judge the judge Well, I can't the orders that the specific orders that we appealed from your honor Reference all of the actions that were taken in the case And so if we look at we look at those four orders the ones awarding fees Which are the culmination of fees awarded throughout the case? Ordered and paid and then we look at the orders extending liens and approving that the sale and disposition of assets Those are all referenced in the final orders that are in our supplemental appendix that we attach to our initial brief That's that's the the essence of what was the culmination and in the bankruptcy case and this is key We have in the bankruptcy case the ability to pull that money back and that doesn't go back subject to liens That gets that the trustee in the bankruptcy case in heritage and in SLR G both succeed to the lien So those monies then become available to unsecured creditors It is the continuing damage that occurred to creditors here by the disposition of those assets that are recoverable under chapter 5 of the bankruptcy code that gives the creditors a continuing stake in this litigation and It's very important to note as well To get to the substance of the of the so-called collateral bar doctrine, which the appellees have turned on their head This is where orders judges the opinions that they cite in support of that doctrine actually Are turned on their head and support the appellant's position in one example We have the case of in re mark or double lumen hemodialysis catheter patent litigation Judge Easterbrook was presiding over Multidistrict litigation when one of the litigants filed the prepackaged bankruptcy case in the District of Delaware near the end of discovery That litigant a litigant named Kendall then proceeded to obtain a strange TRO from the bankruptcy court that precluded not just litigation against non-debtors as well as himself but also precluded any party from appearing in front of judge Easterbrook who sought direction as to the impact of the automatic stay on the bankruptcy case While judge Easterbrook took note Notable exception to the tactics and the extraordinary breadth of what he called the rogue TRO He rightfully reserved to himself the ability to interpret the automatic stay which is an area for which there was concurrent jurisdiction And nevertheless had to send mark or back to the bankruptcy court for relief that required Let me ask you a similar stripe of the question this way. Yes without Because we don't we don't have the docket entries in the orders at our fingertips. That's what the prior exchange established Okay, forget that for a minute identify an asset Okay, it was disposed of or or there was a lien that affected just tell me what the asset was That your class cares about dozens of trains owned by heritage rail leasing company Okay. So as one of those is one of the orders you're referring to the cancellation of the lease No, I'm referring to the extension of the liens granted to the IRS the extension of liens granted to Big Shoulders capital when they put money into the receivership case which essentially increased the amount of their indebtedness owed to them and Extended those liens over assets that were not part of the original case and it was done significantly in in the order two days after the Involuntary bankruptcy petition was filed and covered an additional 20 Let me did you did you appeal from that order? Well, your honor we did you appeal here we appealed from the final orders pursuant to which the pursuant to which the court below blessed the Propriety of all of the orders that went before it and this is a and I know where you're going here So the question is did we have not appeal? Why didn't we appeal from the original receivership order and the answer is that we're talking about subject matter jurisdiction here We're talking about the issue and a raising of that if the final order that was issued was without subject matter Jurisdiction and this court decides here today that there was no subject matter jurisdiction over the final order It's really irrelevant whether we appealed from the first order or the last order Because they all are going to follow the same this in the same bank. The court was without jurisdiction as of April 16th  You say you appealed from the final order the final order as I understand it was an order terminating the receivership Yes, but that order didn't just terminate the receivership. It contained an additional Debbie of language that said that all the things that had been before it all the liens are extended all of them fees that were paid all of the money that was paid out to the Secured creditor. These were all proper and appropriate and yet they were done with a by a court without Jurisdiction as of October 19th now judge Easterbrook said in his decision And Mark or for example, he says look it's one thing when a judge and a litigant comes to me and asks for support It's not like they they pretended that the bankruptcy never happened and proceeded Anyway, that was a violation of the law according to that decision and that is where we are today with a violation Of the law by the appellees and the receiver and the secured creditor big shoulders That is what happened here in this case your honor The bottom line is that the all-which-act does not use and cannot be used to invalidate an entire act of Congress That would occur if the court were to rule otherwise today Thank You. Mr. Tobacco deck. We're now going to move to our arguments from the Apple ease. We're going to begin first with mr. Vincent Good morning, your honors Brent Vincent Brian cave late and pays near on behalf of the plaintiff in this case in Apple Ease big shoulders capital. I want to pick up on some of the questioning and discussions we've had before in terms of the standing of The three appellants here to even be before this court and I think as the court knows This is really the threshold issue before we talk about anything else and they want to allege, you know baseless violations of law by my client who Did everything appropriately as we'll talk about later on in this in this case and was in some ways to the detriment of these defendants The receivership here was was kind of undermined and we're now in multiple bankruptcies in multiple places Which is not to their benefit, but initially these plaintiffs have this have the burden of proof of establishing standing That's the clapper case Supreme Court and as has been hit on not only they have to establish an injury In fact, it has to be concrete and it has to be imminent And they haven't established that there's a lot of speculation here We cite a case I believe, you know about standing called the ABS case Which talks about just because you don't like some of the language or some of the things that happened in the underlying case Doesn't mean you have standing. Mr. Mr. Vincent. Don't like it. That's what happens You have to have a concrete injury. Mr. Vincent Injury, and I think this is important has to be traceable to the actions of the defendant here And it has to be likely as opposed to merely speculative that the injury is going to be redressed by a favorable decision Mr. Benson, I think this mr. Judge Kersh had a question. Oh, sorry. That's okay. Can you hear me? I Can okay. Can you can you specifically address? Standing with respect to intervener Santan's argument regarding the IRS agreement Why is that? Why does that? Why does that? Why does that IRS agreement and the liens that were? This the liens became senior to Santan as I understand it and also the liens were applied to other companies Which did not have any IRS debt. They may not have any assets or they may have assets I don't know but the IRS liens were applied to other companies. Why does that not confer standing at least as with respect to? Stanton or Santan All right. Well initially in the IRS agreement There is a provision that says that the liens are expressly subordinated to any security interests that attach prior to the date of the receivership So there but they're in there. Wait a minute. They're unsecured right their liens are unsecured. So that doesn't apply to Santan And then that comes in their reply brief though where they initially talked about well, we may be they may jump ahead of us We may be secured now in the reply brief. They indicate that they are in fact unsecured But I think that the harm here is speculative in the sense and and you have to have real harm not speculative harm That we could be behind the IRS. They could be secured and be ahead of us That's not happening. That could happen. It may or may not the IRS may try to claim In against assets that Santan is Seeking to recover from or they may not we don't know that and that is too speculative for standing I think maybe most importantly and this goes back to some of the things. Mr. Panca was talking about The IRS is an agent of the federal government here and they have rights to Jump the line in priority when they have taxes So nothing that happened here giving the IRS liens in other entities or potentially claims against other entities It's something that couldn't otherwise happen. Well, if that's the case what wait if that's the case Why did the IRS object in the first place? Now the IRS objected in the first place in this instance because there were going to be funds That were going to be expended in the receivership, right? that could potentially Go ahead of the IRS or that they since they don't have the waiver of sovereign immunity in a receivership like they wouldn't have bankruptcy So that's why they that's why they objected in essence. You're looking to enter into a receivership order whereby a forbearance agreement whereby more funds would be expended by big shoulders and We want to make sure that we're protected in that regard And really what the agreement was was just kind of skipping a step the IRS could have proven all these things It's been laid out in the record in the Board of Locomotive Engineers case talks about the lower standard that the IRS has to Skip through and appears through corporate forms So the IRS could have done this they just cut the line through this there's nothing that happened here in the IRS agreement that the IRS couldn't have otherwise asserted in Another in this action or in another action We just in order to move forward quickly and to effectuate a quick sale of these assets to the benefit of all creditors In this case, you know the receiver Determined it was the best for the IRS to jump the line and I will invite The receivers council to speak more to that because my client was not involved in the IRS negotiation. Mr. Vincent Yes, when when this lawsuit commenced as a breach of contract action in the Northern District of Illinois Why did you not sue Iowa Pacific? Why Iowa Pacific Holdings the parent corporation weren't were and the reason I asked that is was Iowa Pacific a party to the Underlying lending agreements that were the subject of the breach of contract action They were as were many other entities. So the answer is yes, they were they were okay. Why did you not sue them? We did a pre filing investigation and we sued the two entities who one had material evidence Assets who both had material assets and were ongoing entities that could continue to generate assets Those were and that was Mount Hood and SLR G We did talk about there's an affidavit from our principal Todd B. Denadato that talks about heritage And Chicago Terminal and Chicago Terminal also fit that category but was in in the midst of a sale process Which we didn't want to bring slow down by bringing them to court Did the due diligence process that occurred before the filing of the lawsuit entail considerations as to the scope of the desired receivership Not from my client standpoint the receiver is an independent officer of the court What is a not from your client's standpoint From our standpoint was we wanted to have when we were going to put more money into these entities Some sort of independent management so that the the money wouldn't literally just go down the drain, right? Sure, and the two options are a chapter 11 bankruptcy trustee or a receiver So we wanted to put in a receiver who would be independent would manage the company so that when we entered into these subsequent Forbearance agreements, we knew that the money was going to be towards, you know, the ultimate goal of repayment, right? As a commercial matter that makes complete sense to me. My question is did your client have discussions with Novo advisors? About the desired scope of the receivership. I Don't know the answer to that question, I think the I was not involved there I think the affidavit of D Benedetto though lays out that there was no agreement There was nothing there where we were telling the receiver what we wanted to have happen or what we thought should happen We delegated to their judgment With note your position is that big shoulders had no input and was indifferent as to the scope of the receivership. I Don't think it's to say that we're indifferent to the scope of the receivership are from it Are from it right the way that the way that the receivership? Works to your clients economic advantages precisely along the lines that you were just articulating That it has advantages over bankruptcy right in this situation That's that's accurate and in fact, I think there's a filing by the receiver that lays out Exactly what some of these advantages are sure and therefore and therefore it seemed it seems important to me as A commercial matter. I'm not talking about so much as a legal matter But it seems important as a commercial matter that the receivership would be of the broadest possible scope vis-a-vis the Iowa Pacific holding family of companies I Think the necessity there would be to gather enough assets, right and to have enough parties under the tent whereby you could effectuate the remedy You're looking for a right which would be to the protection of creditors of an insolvent entity our client was agreeing and continued to fund this entity with the thought process that it and other creditors could be made whole through a Sale either as a whole or in part. Do you know? Yes, you would have sued if you would have been a different choice to sue Iowa Pacific on day one What would the diversity analysis have looked like That's a really interesting question because Iowa Pacific's an LLC and we'd have to then go start punching through in terms of who is You know which individuals or which corporate entities because when we do the diversity analysis We have to punch through an LLC till we hit a corporation or till we hit an individual And so I think what's the I know we know we know how it works that way. What's the answer? The answer is I think to some extent one of the owners. Mr. Ellis is an Illinois resident No complete diversity. I Believe that's correct. Yes Mr Vincent Scudder is judge Scudder's questions take us to the grill in the room which is why this case is the receivership and not a bankruptcy you mentioned the document in the file that indicates some of the Bankruptcy here as this case has progressed for those of us who are Involved in it. There's a lot of indicia here that this for creditors and everyone to be protected that a bankruptcy might be a better Procedural vehicle here than a receivership. Do you want to speak to that? Sure, so we could not big shoulders capital could not have filed involuntary bankruptcy railroads cannot File under chapter 7 they have to file under chapter 11. We could not have filed an involuntary Bankruptcy under the bankruptcy code 11 USC 303 b1 Because we were a fully secured creditor So either the entity would have to file a voluntary or an unsecured would have to put it into bankruptcy So from our standpoint that really wasn't even an option and frankly the receivership we viewed would have been In some ways a preferable option at least from a big shoulder standpoint because then you put in Someone as the receiver who may know the industry who may have a background with the particular Business would have looked through things as opposed to a chapter 11 trustee who would be appointed under a railroad I think from under the surface transportation board. So as opposed to a wild card, you're getting more of a certainty You also are getting into a situation where chapter 11 bankruptcy proceedings as I'm sure all the council here We'll go through can be very expensive and you might have multiple ones as we do here as opposed to one Centralized receivership which makes the receivership preferable as well and frankly also in a chapter 11 bankruptcy, somebody has to support the continuing operations of the entity and That is and and the at we are research indicated that the operations of the entity could not be supported in the chapter 11 Absent additional monies being put in and the only person who stepped up in this case was my client Thank you Mr. Vincent did the district court ever Induct or apply the nerve center test to determine the defendants principal place of business It did not The nerve center test was first raised on appeal The motion to dismiss that was before the district court that was appealed from was based upon failure to join necessary parties under rule 19 and allegations of collusive Why shouldn't we remanded the district court for such an analysis to determine whether or not the district court had? diversity jurisdiction of the nerve center test to begin with From a practical standpoint, we basically have a done and dusted and wrapped up case And I understand that that doesn't necessarily solve the problem, but we have a receivership It's been terminated as we've heard here very few if any rights have been affected of any of the parties before the court We have ongoing bankruptcy actions in Colorado It would seem to be in some ways, you know, not an efficient use of both then But then what what do you see and the judge's time? But are you suggesting that we then issue an opinion in a case in which federal jurisdiction may not? Lie My suggestion would be and Just to be frank would be that the opinion should say that neither of these entities have any standing To appeal the to appeal and they have no more standing to be involved in the case And so therefore this issue doesn't even come to the forefront But to answer the question again, you know in addition I do think that we look at the actual jurisdictional facts. You look at the Michaud affidavit, which mr. Goldsmith makes a Spent a lot of time talking about there's one thing that's noticeably absent about that affidavit. It doesn't have any jurisdictional facts about Mount Hood or SLRG it talks about the amorphous Single enterprise that they want to basically have every affiliated Iowa Pacific Holdings entity share principal place of business with the other for purposes of jurisdiction which is you know as we've walked through not something that I've seen has been Approved by the Seventh Circuit or even the Fifth Circuit in the attribution analysis, which is a much more limited use of the alter-ego So the jurisdictional facts we have are from the loan documents and in the loan documents Which you would think would have an addition of reliability. We have the two defendants themselves Warranting and representing that they're residents of Mount Hood, Oregon. We do let me ask you a question. We do have mr. Michaud I think that's his name's declaration as well, right? We do and we should I guess we can't just ignore that can we or can we just ignore that well so it's the Michaud declaration speaks to the operations of the parents or this amorphous entity as a whole and has no doesn't speak at all to the operations of the two Defendants in the case the top case out of the First Circuit Which while it was decided before Hertz does apply a nerve center analysis says it's inappropriate To look at the contacts of the parent or the operations of the parent but you have to look at is how or what the nerve center was of the actual defendants and The evidence that the nerve center of the defendants here is that they ran a railroad in Colorado and one ran a railroad in Oregon Right and that their principal places of business is affirmed by them and document in commercial documents to get a loan We're in fact in those two states. I think from a filing the complaint standpoint That would establish diversity of jurisdiction and I'll note that Santan in its initial motion on page 8, I believe Conceded there was diversity jurisdiction in the case as the judge took in in ruling on that motion initially So what we have here is basically diversity jurisdiction. We have on appeal an Allegation that because of the operations of this large single enterprise That we need to attribute those operations to Mountain Hood and SLRG when there's no specific discussion about what How those two entities were operated and I would also argue that It's pretty established in a lot of the cases cited here by Santan that a parent can dominate a subsidiary That's part of the benefit of control of the company, right? You can dominate your subsidiary. You can make decisions for it They said that that was not inappropriate It certainly happened in this Quaker State case as well as in the met him case Which are cited by them where the parent was very involved in the day-to-day operation And there's a very low bar in terms of parental involvement when you actually punch through to an alter ego So I think by the record evidence we have which is the loan documents We also have the statements of mr. D Benedetto And the fact that to me show declaration while it says a lot of things It does not talk about SLRG or Mount Hood and I think you would be be going beyond the analysis In I would posit beyond the analysis. Okay by the top court and looking to those, you know more general single enterprise wide operational details and Plus I would say that that is a very conclusory affidavit when they say all decisions for all companies I mean that can't be accurate. So You know somebody how do you know that? How do you know that is so that I mean when you say it's conclusory. I You know when I read that in your brief, I thought the Michaud declaration might be two three paragraphs It it doesn't look even remotely conclusory to me and So is your is your position that it contains false? statements I